UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

Amit Sinha,

          Plaintiff,

    vs.

Bradley University,

Case No. 24 cv 1059

## MOTION OF BRADLEY UNIVERSITY FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and CDIL-LR 7.1(D), Defendant, Bradley University ("Bradley"), moves for summary judgment in its favor and against Plaintiff, Amit Sinha ("Sinha"), with respect to all claims in both Counts of Sinha's Complaint.

### (a) INTRODUCTION

Sinha, a Professor of Finance at Bradley, alleges he was retaliated against by Bradley because he opposed illegal discrimination. His Complaint consists of two Counts, each based on the same factual allegations. Count I is founded on the anti-retaliation provisions in Title VII of the Civil Rights Act of 1964. Count II's legal basis is the anti-retaliation provisions in the Age Discrimination in Employment Act of 1967.

For Sinha to succeed on a retaliation claim, Sinha must establish the following three elements: (1) that he engaged in protected activity under Title VII or the ADEA; (2) that he suffered an adverse employment action; and, (3) the existence of a causal link between the first two elements. This Motion is based on the absence of evidence from which a reasonable jury could conclude that the causation element was satisfied.

1

On March 22, 2017, Sinha was removed from the position of Chair of the Department of Finance and Quantitative Methods following reports of a toxic environment in that Department. In July 2017 and February 2018, Sinha filed charges of discriminations with the Illinois Department of Human Rights relating to his removal as Department Chair. In August 2018, Sinha sued Bradley in the Central District of Illinois based on the allegations of his IDHR Charges. Judgment was entered in favor of Bradley in that case. That judgment was affirmed by the United States Court of Appeals for the Seventh Circuit in April 2021.

Following Sinha's March 2017 removal as Department Chair, that Department had a series of appointed chairs. In January 2022, however, it was determined to hold an election for a new chair. That election was held in February 2022. Sinha ran and won. His election was subject to approval and ratification by the Dean of the College. The Dean at the time, Molly Gribb, requested that Sinha provide her with a detailed list of the personal and professional development work that he had completed to address the documented toxic work environment that existed in the Department while he was Chair. Sinha provided Dean Gribb with a document in response to her request. She determined, however, that the document did not demonstrate that Sinha had worked on developing the leadership skills needed to be a department chair, so she declined to ratify Sinha's election.

Sinha contends that retaliation for his engaging in protected activity is shown by (a) the refusal to ratify the election not being in compliance with Bradley's Faculty Handbook; (b) that it was false to state that the document he provided the Dean did not show professional development activities; (c) professional development is not a requirement to serve as a chairperson; (d) after she declined to ratify the election, Dean Gribb did not meet with the Department faculty to advise them of her rationale for the decision not to ratify or to instead hold a special election.

Sinha's contentions lack merit because the Faculty Handbook does not restrict a dean's discretion in determining whether to ratify a department chair election. Sinha's previous removal as a department chair, and the reasons for it, were valid concerns for Dean Gribb. Her judgment that Sinha's documentation of his professional development activities was wanting was consistent with her authority under the Faculty Handbook and is not evidence of a retaliatory motive. Dean Gribb's not meeting with Department faculty after she made her decision not to ratify does not support an inference of retaliation, as holding such a meeting had nothing to do with the exercise of her discretion. Moreover, such a meeting was unnecessary where after Sinha's election was not ratified, work began on merging the Departments of Finance and Economics, so the issue of a new chairperson for the Finance Department became moot.

Sinha has no evidence that could support a reasonable inference that Dean Gribb acted with a retaliatory motive. The time lapse between Sinha's prior protected activity and the refusal to ratify is too great to support an inference of a retaliatory motive. Sinha does not claim that any other similarly situated Bradley employee elected as a department chair was treated more favorably than he was. Sinha's own records, made when he was concerned about the possibility of retaliation, show that Dean Gribb never did or said anything in communicating with Sinha that would support an inference of a retaliatory motive.

As there is no direct or circumstantial evidence to support a causal connection between Sinha's earlier protected activity and the failure to ratify his election in 2022, no reasonable jury could find in Sinha's favor on the issue of causation. Accordingly, Bradley is entitled to summary judgment on both Counts of Sinha's complaint.

## (b) UNDISPUTED MATERIAL FACTS

1.     Sinha is employed as a Professor of Finance at Bradley. (Complaint. ¶ 9 [ECF # 1, p. 2] and Answer, ¶ 9 [ECF # 8, p.2]).

2.     In 2013, Sinha began serving as the elected Chair of the Department of Finance and Quantitative Methods at Bradley. (Sinha Dep., p.32, line 22).

3.     On November 9, 2016, the Faculty Grievance Committee at Bradley reported to then President Roberts that due to a negative environment in the Department of Finance and Quantitative Methods, it was recommended that Sinha be replaced as Department Chair. (Sinha Dep. P. 70, lines 4-11 and Ex. 8).

4.     A report of a Title IX Investigation involving Sinha dated March 7, 2017 found a dysfunctional environment in Sinha's Department. (Sinha Dep. p. 69, lines 7-24, and p. 70, line 1, and Ex. 7).

5.     On March 22, 2017, Sinha was removed as Chair of the Finance Department due to reports concerning a toxic environment existing in his department while he was Chair. (Sinha Dep., p. 11, lines 12-21 and Ex. 1; p. 70, lines 18-24 and Ex. 9, p. 1, ¶ 1; p. 71, lines 1-24 and Ex. 9, pp. 1-4, ¶¶ 3-5, 13 and Facts 3 and 4 above).

6.     On July 31, 2017, Sinha filed a charge of discrimination against Bradley claiming that his removal as department chair on March 22, 2017 was based on national origin and sex discrimination and retaliation. (Sinha Dep. p. 4, lines 11-24 and p. 5, lines 1-2 and Ex. 1).

7.     On February 28, 2018, Sinha filed a charge of discrimination against Bradley alleging that he was not promoted in retaliation for filing his July 31, 2017 charge. (Sinha Dep. p. 5, lines 5-14 and Ex. 2).

8.      On August 31, 2018, Sinha filed a lawsuit against Bradley in the United States District Court for the Central District of Illinois on the basis of the allegations of his 2017 and 2018 charges of discrimination. (Sinha Dep. p. 5, lines 17-24 and Ex. 3).

9.      Judgment was entered in favor of Bradley in Sinha's 2018 lawsuit, and that judgment was affirmed by the United States Court of Appeals for the Seventh Circuit in a decision issued on April 26, 2021. *Sinha v. Bradley University*, 995 F.3d 568 (7th Cir. 2021).

10.     In January of 2022, Dean Molly Gribb determined that an election for a department chair should be held in what was then known as the Finance Department. (Gribb Dep. p. 11, lines 13-24 and p. 12, lines 1-4).

11.     Sinha won the election to be Chair of the Finance Department. (Gribb Dep., p. 23, lines 17-19).

12.     Bradley's Faculty Handbook provides procedures for the election of department chairs which include that any election must be approved and ratified by the dean of the college. (Sinha Dep. Ex. 6, pp. 25-30 (Bates stamped Sinha 000021-000026)).

13.     Sinha claims that Dean Gribb told him prior to the election that she would not ratify the election if he won, mentioning that she had heard about the reputation of the Department and read about Sinha's removal as Chair prior to the completion of his term. (Sinha Dep. p. 42, lines 17-24 and p. 43 lines 1-17 and Ex. 6, pp. 6-7 (Bates stamped Sinha 000002-000003)).

14.     On February 25, 2022, Dean Gribb notified Sinha that she wanted to meet with him to discuss the outcome of the chair election but requested that prior to that meeting Sinha send her a detailed list of the personal and professional development work that he had completed to address the documented toxic work environment that existed in the Finance Department while he was

Chair. (Sinha Dep. pp. 48 lines 18-24 and p. 49 lines 1-4, and Ex. 6, p. 8 (Bates stamped Sinha 000004) and p. 22 (Bates stamped Sinha 000018)).

15.    Sinha prepared the documentation requested by Dean Gribb. (Sinha Dep. p. 49, lines 3-22 and Ex. 6 pp.10-13 (Bates stamped Sinha 000006-000009)).

16.    On March 4, 2022, Dean Gribb met with Sinha and informed him that she would not ratify the election because the documentation provided by Sinha did not show professional development activities. (Sinha Dep., p. 63, lines 3-16).

17.    Dean Gribb's conclusion after reviewing Sinha's documentation was that it did not provide evidence that Sinha had worked on developing the leadership skills he would need to be a department chair. (Gribb Dep., 39, lines 14-21).

18.    When asked to identify professional development activity, defined as developing and improving skills such as planning, organization, leadership and management, listed in the documentation he provided to Dean Gribb, Sinha identified only working on relationships between Bradley and third parties and working on accreditation matters. (Sinha Dep. p. 62, lines 5-21).

19.    The only facts that Sinha contends support a finding that his February 2022 election was not ratified in retaliation for his protected activities are that (a) the refusal to ratify did not comply with Bradley's Faculty Handbook; (b) it is false to say that the documentation he provided to Dean Gribb did not show professional development activities; (c) professional development is not a requirement to serve as a department chair; and (d) Dean Gribb violated the Faculty Handbook by not meeting with Finance Department faculty to inform them of the rationale for her decision not to ratify or instead to hold a special election. (Sinha Dep. pp. 8, lines 12-24, and p. 9, lines 1-6 and Ex. 4).

6

20.    The only part of the procedure for electing department chairs that Sinha contends that Dean Gribb did not follow was meeting with the Department to explain the rationale for declining to ratify the election. (Sinha Dep. p. 75, lines 15-23).

21.    After the non-ratification of Sinha's election, Dean Gribb began exploring the opportunity to merge the very small Finance Department into the Economics Department and regarded meeting with the Finance Department regarding the non-ratification of the election as moot. (Gribb Dep. p. 28, lines 10-24, p. 29, lines 1-11, p. 31, lines 5-12, p. 34, lines 7-24, and Ex. 13, p. 2 (Bates stamped BU 000103)).

22.    Sinha does not contend that any similarly situated Bradley faculty member who was elected as a department chair, having previously been removed as one, was treated more favorably than he was and agrees that his situation is unique. (Sinha Dep. p. 87, lines 14-24, p. 88, lines 1-10).

23.    Sinha feels the losses he alleges because of not becoming a department chair were "suffered because some people didn't like me." (Sinha Dep. p. 89, lines 11-13)

## (c) ARGUMENT

The Court may enter summary judgment on any claim if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a).

Sinha's retaliation claims are made under Title VII (Count I) and the ADEA (Count II). The legal analysis of retaliation claims under Title VII and the ADEA is the same. *Lewis v. Indiana Wesleyan University*, 36 F.4th 755, 761 (7th Cir. 2022); *Kuhn v. United Airlines,* 63 F. Supp. 3d 796, 801 (N.D. Ill. 2014). To survive summary judgment, Sinha must produce evidence from which a reasonable juror could find that: (1) he engaged in statutorily protected activity; (2) he suffered

an adverse employment action; and (3) there is a causal link between the two. *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023). The key question is whether a reasonable juror could conclude that there was a causal link between the protected activity and the adverse action. *Id*. Evidence relevant to the causation issue can include suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence that the employer's proffered reason for the adverse action was pretextual. *Id*.

The theory of Sinha's case is that his election as Department Chair was not ratified because Dean Gribb had a retaliatory motive. However, Sinha has no evidence to support that theory.

An employee alleging retaliation may proceed on either the burden shifting framework under *McDonnell Douglass v. Green* or a holistic review of the evidence. *E.g., Buchanan v. Commonwealth Edison*, 2025 WL 963920, *2 (N.D. Ill. 2025). Here, Sinha has failed to identify any similarly situated comparator so the *McDonnell Douglas* burden shifting approach is not available to him. *Igasaki v. Illinois Department of Financial and Professional Regulation*, 988 F.3d 948, 958 (7th Cir. 2021) (failure to identify a similarly situated employee makes review under *McDonnell Douglas* functionally impossible).

Sinha's claims of evidentiary support for his retaliation theory are limited. He does not claim to have any direct evidence of a retaliatory motive. As to circumstantial evidence, he claims only that a retaliatory motive can be inferred because the Faculty Handbook procedures on department chair elections were not followed, that professional development activity is not a requirement to be a department chair at Bradley, and that regardless of the absence of any such requirement, he did demonstrate professional development activity in the documentation he provided to Dean Gribb.

8

Sinha admits, however, that the only respect in which the Faculty Handbook was not followed was that Dean Gribb did not hold a follow-up meeting with Finance Department faculty to explain the rationale for her decision not to ratify the election. (Sinha Dep., p. 47, 75). That deviation from the procedures in the Faculty Handbook does not help Sinha because "...for a jury to be able to infer any impropriety based on an employer's failure to abide by its own procedures, the employee must show that there was an actual procedure in place *that served to bind the employer's discretion*." *Everett v. Cook County,* 655 F.3d 723, 728 (7th Cir. 2011) (emphasis supplied). Nothing in the Faculty Handbook procedure regarding department chair elections in any way restricts a dean's discretion in determining whether to ratify the results of an election. The meeting that a dean would have with a department after not ratifying an election is not a limitation the dean's discretion in deciding whether to ratify an election.

Nor was the failure to hold such a meeting detrimental to Sinha. An employer's failure to follow a procedure where the failure is not detrimental to an employee does not give rise to an inference of an improper motive. *Cooksey v. Board of Education of City of Chicago*, 17 F. Supp. 3d 772, 798n.33 (N.D. Ill. 2014). Further, Dean Gribb did not hold such a meeting because, following the election, it was determined to explore the merger of the Finance Department into the Economics Department, which obviated the need for any further procedures to elect or otherwise choose a chair for the Finance Department. Clearly, the Dean's not meeting with the Department after not ratifying Sinha's election cannot be the basis for any reasonable inference that she acted with a retaliatory motive.

Sinha's other bases for claiming there was retaliation are that professional development is not a requirement to serve as a department chair and that in any event, Sinha's document did show professional development activities. Because Sinha had previously been removed as chair of his

department due to dysfunction in the department while he was Chair, an effort by Dean Gribb to ascertain whether Sinha had taken steps to improve his leadership skills was perfectly appropriate and not a basis for inferring retaliatory intent. Further, Dean Gribb's assessment that Sinha's document did not demonstrate professional development activity is a more than fair reading of the document. (*See,* Dep. Exhibit 6, pp. 10-13). Sinha himself could not identify anything in his documentation that plausibly constituted professional development activities that could make him a better department chair on his second try. (Sinha Dep., p. 62).

Sinha's protected activity preceded Dean Gribb's decision not to ratify his election. Due to the length of time between Sinha's prior activities and Dean Gribb's decision, no inference of a retaliatory motive based on timing alone is available to Sinha. *E.g., Kidwell v. Eisenhauer*, 679 F. 3d 957, 966-67 (7th Cir. 2012) (an inference of causation based on timing typically requires that no more than a few days elapse between the protected activity and the adverse action). Here, Sinha's prior litigation concluded in April 2021 when the Seventh Circuit decided his appeal. That was many months before the non-ratification decision in March of 2022. Further, the time of Sinha's prior protected activity should probably be measured from the filing of his lawsuit in 2018. (*See, Burton v. Board of Regents of University of Wisconsin System*, 851 F.3d 690, 698 (7th Cir. 2017)).

### (d) CONCLUSION

Bradley has demonstrated the absence of evidence to support the causation element of Sinha's retaliation claims. Thus, there is no genuine dispute as to any material fact that Sinha cannot establish causation and no reasonable jury could find in Sinha's favor on the issue. Accordingly, the Court should enter summary judgment in favor of Bradley and against Sinha on each Count of Sinha's Complaint. See, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Respectfully submitted,

Bradley University, Defendant


By: ___/s/ William R. Kohlhase_____
        William R. Kohlhase – IL Bar No. 1500589
        Miller, Hall & Triggs, LLC
        416 Main Street, Suite 1125
        Peoria, Illinois 61602
        Telephone:  (309) 671-9600
        Facsimile:   (309) 671-9616
        Email:  william.kohlhase@mhtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Julie L. Galassi and Bryant S. Lowe.

           /s/  William R. Kohlhase
William R. Kohlhase – IL Bar No. 1500589
Miller, Hall & Triggs, LLC
416 Main Street, Suite 1125
Peoria, Illinois 61602
Telephone:  (309) 671-9600
Facsimile:   (309) 671-9616
Email:  william.kohlhase@mhtlaw.com

12