E-FILED
Wednesday, 18 June, 2025  03:16:41 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

Amit Sinha,

                Plaintiff,

        vs.                                            Case No. 24 cv 1059

Bradley University,

                Defendant.

**<u>REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT</u>**

In reply to Plaintiff's Response to Defendant's Motion for Summary Judgment [ECF # 29], Defendant, Bradley University ("Bradley"), states:

**(a) Reply to Additional Material Facts**

**Summary of Legal Principles**

Plaintiff, Amit Sinha's ("Sinha"), Response includes 155 claimed additional material facts, many of which include multiple asserted facts.  In an effort to avoid excessive repetition and cross references in its replies, Bradley states the following general principles on which its replies are based:

A.      Only those facts that may affect the outcome of this suit under the applicable substantive law are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As explained in the Court's Local Rules: "Material facts are only those facts which bear directly on the legal issue raised by the motion." Civil LR 7.1(D)(1)(b).

B.      The issue raised by Bradley's Motion is whether there is evidence in the record before the Court from which a reasonable jury could conclude that there is a causal link between

Sinha's protected activity (his 2018 lawsuit) and Dean Gribb's decision to not ratify Sinha's 2022 election as Chair of the Finance Department. (ECF # 28, p. 1; ECF # 29, p. 4).

C.    The additional material facts must be specific and cannot be conclusory allegations unsupported by specific facts. *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248; *Payne v. Pauley*, 337 F. 3d 767, 773 (7th Cir. 2003).

D.    To be direct or circumstantial evidence to support an inference of intentional discrimination, allegedly discriminatory remarks must be (a) made by the decision maker, (b) around the time of the decision, and (c) in reference to the adverse employment action. *Bagwe v. Sedgwick Claims Management Services, Inc.*, 811 F. 3d 866, 885 (7th Cir. 2016).

E.    Claimed material facts that are not properly supported by citations to the record are disregarded. *E.g., Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000).

## Specific Replies

## <u>Additional Material Facts</u>

### Testimony of Crystal Elliott

1.    Elliott started working at Bradley in January of 2020 and always served as the HR director. (Elliott Dep. Ex. 1, pg. 4)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

2.    At the end of '21 going into '22 Sinha came to her office to meet. (Elliott Dep. Ex. 1, pg. 7)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

3.      After a short conversation, Elliott followed up with him in an e-mail indicating that she had looked into his concerns and they were going to just follow the faculty handbook. (Elliott Dep. Ex. 1, pg. 7-8)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

4.      Sinha was concerned about retaliation and making sure that Bradley was following the handbook and the process for hiring a department chair. (Elliott Dep. Ex. 1, pg. 8) Elliott most likely talked with the Provost's office. That seems to be my first place to go about questions concerning processes. They were going to follow the policy, the process in the handbook (Elliott Dep. Ex. 1, pg. 9)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

### Testimony of Stephen Kerr

5.      Stephen Kerr served for a time as the Department Chair of the Finance Department. (Kerr Dep. Ex. 2, pg. 9)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

6.      Kerr was finishing his term the academic year of 2021 as chair of the accounting department. In early summer, late spring 2021, Matt O'Brien approached Kerr to be the acting chair of finance for a year while they found a permanent chair for the department. (Kerr Dep. Ex. 2, pg. 9)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

7. Kerr's goal or objective as Finance Chair was to work towards the department having their own chair. (Kerr Dep. Ex. 2, pg. 13)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

8. Kerr did not know why the Finance Department had had four years of being without a permanent chair and being able to elect one. That seemed unusual. (Kerr Dep. Ex. 2, pg. 14)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

9. Kerr's mandate coming in was to hire a new faculty member who could be department chair. Kerr did not know why an outside faculty member would come in as Chair rather than electing a Chair within the Department. Kerr had no reason to question Walter (Zakhai) on that. (Kerr Dep. Ex. 2, pg. 16)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

10. Kerr interacted with Sinha weekly at least maybe three times a month at department meetings for an hour, chitchat in the hallway. So nothing particularly intense but, a normal collegial chat. (Kerr Dep. Ex. 2, pg. 16)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

11. Kerr did not receive any complaints from any of the faculty or students about Sinha. (Kerr Dep. Ex. 2, pg. 21-22)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

12.     During Kerr's time as chair, he said Sinha was eligible to serve as Chair. Sinha was a very robust scholar and is quite good at his scholarship. (Kerr Dep. Ex. 2, pg. 23)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

13.     As for the impact on the faculty members on hiring an outside chair and them not being able to vote on it, Kerr said that was the direction that the Provost had taken in the department. (Kerr Dep. Ex. 2, pg. 24)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

14.     When hiring an outside Chair came up in department discussions because the Finance faculty would have selected their own chair, Kerr told them what is done is done.... there is a search underway to do this....there's no point in talking about something that - a decision's been made. (Kerr Dep. Ex. 2, pg. 24)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

15.     Kerr was chair when the decision was made to stop seeking an outside chair. Kerr was under the impression that Gribb felt the department didn't have enough students at that point to justify adding a fifth faculty member. So, the search was stopped. (Kerr Dep. Ex. 2, pg. 24-25)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

16.    Kerr heard of occasions when an election is not ratified by a Dean or Provost. It's rare but it's not unheard of. (Kerr Dep. Ex. 2, pg. 27)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

17.    After Sinha was elected, he was not ratified. (Kerr Dep. Ex. 2, pg. 29)

**Reply: This is material and undisputed.**

18.    Kerr recalled in January or early 2022 having a conversation with Sinha and Crystal Elliott about Sinha's interactions with Molly Gribb over the election. (Kerr Dep. Ex. 2, pg. 28-29)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

### Testimony of Molly Gribb

19.    Gribb was employed with Bradley January 17th, 2022 to August 1st, 2023 serving as the Dean of the College of Engineering and the Dean of the Foster College of Business. (Gribb Dep. Ex. 3, pg. 6)

**Reply: This is material and undisputed.**

20.    Walter Zakahi was the Provost at the time Gribb was Dean. (Gribb Dep. Ex. 3, pg. 6)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

21.    Gribb was responsible for all of the personnel, all of the facilities, academic programming. It's like being a CEO. (Gribb Dep. Ex. 3, pg. 8)

**Reply: This is material and undisputed.**

22.    While Gribb was Dean, the Associate Dean for the Foster College of Business was Paul Stephens and Matt O'Brien was the interim Dean prior to Gribb coming on board in January. (Gribb Dep. Ex. 3, pg. 9)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

23.    When Gribb arrived she claimed she was informed of what they were doing to begin the external search for an outside Finance Chair. Gribb claimed that it became clear that they weren't following the faculty handbook and that they needed to do that. (Gribb Dep. Ex. 3, pg. 11)

**Reply: This is material and undisputed.**

24.    In late January Gribb claimed she reviewed internal documents about a grievance that had occurred when Sinha was Finance Chair. She received them through the Provost's office. (Gribb Dep. Ex. 3, pg. 12)

**Reply: This is material and undisputed.**

25.    As for whether the Provost ever talked to Gribb about Sinha and his prior election as Chair or the upcoming election as Chair, Gribb said after the election they discussed it. Gribb said she did not recall many of the details. (Gribb Dep. Ex. 3, pg. 13)

**Reply: This is material and undisputed.**

26.    Gribb could not recall whether at the time of the election she had any idea what the Provost's feelings were about Sinha becoming the Department Chair. (Gribb Dep. Ex. 3, pg. 14)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

27.    Gribb claimed that after reading the materials she had some concerns about the Department and about Sinha's potential leadership skills.    Gribb could not recall having a

discussion with any members of the Finance Department about the climate of the Department. (Gribb Dep. Ex. 3, pg. 15-16).

**Reply: This is material and undisputed.**

28. Gribb did not do any type of inquiry or investigation as to whether or not there had been grievances filed amongst the faculty after the one that was reduced to writing in 2017. (Gribb Dep. Ex. 3, pg. 16)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

29. Gribb claims she was concerned about the climate of toxicity within the Department but did not recall talking to any faculty members, Stephen Kerr or Matt O'Brien about this climate of toxicity that was claimed to have existed within the Department. (Gribb Dep. Ex. 3, pg. 16-17)

**Reply: Dean Gribb's concern about toxicity is material and undisputed, but the state of her recollection regarding the other matters is immaterial and undisputed.**

30. Gribb could not recall talking with Sinha about her concerns prior to the election but recalls a meeting with him prior to the election. Gribb claims she did not recall the specifics of that discussion only that it occurred about a week and a half after she started her job. Gribb claims she recalled that was the only meeting she had with Sinha. (Gribb Dep. Ex. 3, pg. 17-18)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

31. Gribb did not remember talking to anyone about Sinha's ability to successfully serve as Chair before the election. (Gribb Dep. Ex. 3, pg. 18.)

8

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. Dean Gribb's testimony was to a lack of memory, not that she did not talk to anyone.**

32. After the election, Gribb asked Sinha to provide some written documentation about professional development he may have taken to prepare himself to successfully lead the Department. (Gribb Dep. Ex. 3, pg. 18)

**Reply: This is material and undisputed.**

33. Gribb asked Sinha to develop this written document even though she had told him, prior to the election, she was not going to ratify the election. (Gribb Dep. Ex. 3, pg. 19)

**Reply: This should be disregarded, as the cited testimony does not support the asserted fact. Dean Gribb's testimony that she gave Sinha the opportunity to show that he had prepared himself for the role of Department Chair by providing documentation of professional development. (ECF # 29-3, pp. 18-19)**

34. The 2017 grievance and potential climate of toxicity was based on how all these faculty members treated each other which was a factor to Gribb. (Gribb Dep. Ex. 3, pg. 19)

**Reply: This is material and undisputed.**

35. Gribb did not know whether Bradley ever undertook any efforts after the grievance report to train or teach the faculty members how not to be toxic to each other. (Gribb Dep. Ex. 3, pg. 20-21)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

36.    Gribb claimed the Provost played no role whatsoever in the decision not to ratify the election of Sinha or that Matt O'Brien had recommended Sinha serve as the Department Chair. (Gribb Dep. Ex. 3, pg. 20-21)

**Reply: This is material and undisputed except that Dean Gribb's testimony was that she was not aware that O'Brien had allegedly recommended Sinha.**

37.    During the meeting with Sinha in January of 2022, Gribb could not recall whether or not she mentioned to Sinha that he was obstructing the process. Gribb couldn't recall saying that if she followed the process of the Chair selection and Sinha were to be elected, under no circumstances would she ratify his election. (Gribb Dep. Ex. 3, pg. 21-22)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. The state of Dean Gribb's recollection at the time of her deposition is not material to the issues raised by Bradley's Motion.**

38.    Gribb said the 2022 election Sinha won unanimously did not show something about a lack of toxicity within the Department because it could mean people were afraid to vote otherwise. (Gribb Dep. Ex. 3, pg. 23-24)

**Reply: This is material and undisputed.**

39.    Gribb claimed Tong was concerned about how the senior faculty might respond to his vote. (Gribb Dep. Ex. 3, pg. 24-25)

**Reply: This is material and undisputed.**

40.    Gribb claimed Professor Tong was concerned about the senior faculty and how they would treat him if he didn't go along with Sinha's election. Gribb had no information, whether in writing or from talking to anyone, that Sinha had ever intimidated anyone in the prior election or the one in 2022. (Gribb Dep. Ex. 3, pg. 25)

10

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

41.   Gribb said she asked Sinha to prepare a document listing certain of his activities, which he did. Gribb could not recall meeting with him about the document and had no interactions with him about the document. (Gribb Dep. Ex. 3, pg. 30)

**Reply: This is material and undisputed. To clarify, as to interactions with Sinha, the cited testimony was that Dean Gribb did not recall any interactions with Sinha about the document.**

42.   Gribb recalled not ratifying an election in another department.  Professor Tempe's interactions with Gribb were adversarial and he was not very cooperative. (Gribb Dep. Ex. 3, pg. 32) There were ten or 12 faculty members in Tempe's Department. (Gribb Dep. Ex. 3, pg. 33)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

43.   Gribb could not remember the breakdown of the vote for Tempe only that she met with the entire Department after the election and told them why she didn't ratify the election. Gribb did not meet with the Finance Department after the election or tell them why she did not ratify Sinha's election. (Gribb Dep. Ex. 3, pg. 33-34)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

44.   The faculty handbook required Gribb to disclose to the Department why she did not ratify Sinha's election. (Gribb Dep. Ex. 3, pg. 34)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To clarify, the cited testimony was that the Faculty Handbook**

11

**stated that the dean should meet with the department to explain why she did not ratify the election. As this would occur after the dean's decision not to ratify the election, it is not material to the issues raised by Bradley's Motion.**

45. Gribb determined that the election issue was moot, such that the handbook provision was irrelevant. (Gribb Dep. Ex. 3, pg. 35)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To clarify, the cited testimony was not that the "election issue" was moot, but rather that meeting with the faculty was moot because matters had moved towards a merger of the Finance Department so there would not be any need for a Chair for that Department.**

46. Tempe did not have the leadership and administrative qualities necessary to succeed. (Gribb Dep. Ex. 3, pg. 37-38)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

47. Gribb didn't recall a meeting with the President to discuss Sinha. (Gribb Dep. Ex. 3, pg. 39)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

48. Gribb claimed Sinha's assignment to her on removing toxicity did not have any evidence in that document that he had worked on developing the leadership skills he would need to be a Department Chair. Gribb did not know what training was available to Department Chairs or whether outside training was available to Sinha after 2017. (Gribb Dep. Ex. 3, pg. 39-40)

**Reply: This is material and undisputed, except that the language "assignment to her on removing toxicity" is not included in the cited testimony, but rather "professional development."**

**Testimony of Walter Zakahi**

49.    In 2020 Matt O'Brien nominated Sinha for one of the finance department's chaired professorships. (Zakahi Dep. Ex. 4, pg. 6)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

50.    Zakhai could not remember any conversations with Matt O'Brien about Sinha becoming chair of the finance department. (Zakahi Dep. Ex. 4, pg. 7)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

51.    Zakhai recalled that he was elected chair and that Dean Gribb did not ratify him as chair but had no memory of any discussions with her about ratification -- or, non-ratification of the election. (Zakahi Dep. Ex. 4, pg. 7)

**Reply: This is material and undisputed.**

52.    Zakahi had no recollection of telling O'Brien that as long as he were provost Sinha was not going to be the department chair. (Zakahi Dep. Ex. 4, pg. 7)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

53.    Zakahi claimed he did have concerns about Sinha being department chair given the previous experience that the department had with him as department chair because of the toxicity that occurred within the department, the apparent lack of leadership in the department,

13

and the fact that Zakahi had two different investigations telling him that Sinha should be removed as department chair. (Zakahi Dep. Ex. 4, pg. 8)

**Reply: This is material and undisputed.**

54.    Zakahi had no recollection of O'Brien or any other individual communicating that this toxicity in the department existed long before Sinha. (Zakahi Dep. Ex. 4, pg. 8)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

55.    Zakahi had no memory of any conversations with Gribb about Sinha's election. (Zakahi Dep. Ex. 4, pg. 9)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

56.    Zakahi recalled that was some other people were involved in the election process but did not remember specifically who they were. (Zakahi Dep. Ex. 4, pg. 11)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

57.    Zakahi said the election occurred shortly after Gribb came to Bradley and as to whether he ever had a discussion with her about Sinha's pre 2020 removal as chair, Zakahi said he sent her reports from the Title IX investigation and from human resources. (Zakahi Dep. Ex. 4, pg. 12-13)

**Reply: This is material and undisputed.**

58.    Zakahi claimed he had no role in not ratifying the election, Gribb was the sole decision maker. (Zakahi Dep. Ex. 4, pg. 13)

**Reply: This is material and undisputed.**

14

59.     Zakahi agreed there had only been a couple of instances where an election was not ratified and the decision may have been discussed with him but he did not remember. Zakahi would have expected the dean to discuss such a decision with him beforehand but he had no recollection. (Zakahi Dep. Ex. 4, pg. 14-15)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

60.     Zakahi said he did not remember or recall whether O'Brien supported Sinha being the chair of the finance department. (Zakahi Dep. Ex. 4, pg. 17-18)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

### Testimony of Paul Stephens

61.   Paul Stephens is the associate dean. (Stephens Dep. Ex. 5, pg. 5)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

62.   Matt O'Brien was at the interim dean at the time. (Stephens Dep. Ex. 5, pg. 6)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

63.   In the beginning of 2022, Stephens was told there was going to be a vacancy in the chair position of Sinha's department, probably by Dean Gribb who asked him to run the election occurring probably in February. (Stephens Dep. Ex. 5, pg. 13)

**Reply: This is material and undisputed.**

64.   Stephens did not believe he would have informed Horvath and Sinha the Dean and the Provost would not ratify the election. (Stephens Dep. Ex. 5, pg. 16)

**Reply: This is immaterial but disputed. It is disputed because the cited testimony does not support the asserted fact. Stephen's testimony was "I don't believe I would have said that" when asked whether he had told Horvath and Sinha that the Dean and Provost would not ratify the election.**

65. Sinha won the Chair election. (Stephens Dep. Ex. 5, pg. 20)

**Reply: This is material and undisputed.**

66. As far as conversations, the thrust of it was that Gribb told Sinha that she wouldn't approve the election. Gribb had not informed Stephens. Gribb would have had to have said why, but she didn't tell Stephens and he did not remember if Gribb provided a reason in the meeting with Sinha and Gribb. (Stephens Dep. Ex. 5, pg. 21)

**Reply: It is material and undisputed that Stephens was in a meeting with Dean Gribb and Sinha when the Dean informed Sinha she would not ratify the election. The balance of what is asserted here is immaterial as it is just testimony as to what Stephens said he could not recall. It is not disputed that Stephens so testified.**

67. Stephens was a bit surprised about the decision not to ratify Sinha's election. (Stephens Dep. Ex. 5, pg. 22)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

68. Stephens told Sinha and Professor Horvath what his role was in the (election) process, and at a certain point in the process, his responsibilities end and then it's handed off to the dean and the provost and Stephens had no control over that. (Stephens Dep. Ex. 5, pg. 23)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

16

69. Stephens' position to the Department members was that he would urge the Dean to ratify the election whoever got elected. (Stephens Dep. Ex. 5, pg. 23-24)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

70. Stephens was aware, having been in the college for a long time, that there were problems in the finance department before Amit was in the department and that obviously there were some problems because there was a series of people from outside the department assigned as chairs of the department. Stephens didn't know anything about what was actually going on and he didn't think it was any of his business. (Stephens Dep. Ex. 5, pg. 24)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

71. As of the time of the election in 2022, Stephens was not aware of any, whether true or not, perceived problems that Sinha was causing within the finance department; none of the faculty members tenured or not complained to him about Sinha in 2022. (Stephens Dep. Ex. 5, pg. 24-25)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

72. Stephens denied telling Sinha after this department meeting in February of 2022 that it had taken years to correct the wrong done to him. (Stephens Dep. Ex. 5, pg. 24-25)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

73. Stephens did not recall expressing at the meeting with Gribb and Amit that the problems that had existed in the finance department were not Amit's creation though he was aware

17

having been in the college for so long that there were problems that had preceded Amit even being in the college. (Stephens Dep. Ex. 5, pg. 27)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

### Testimony of Matthew O'Brien

74. Matthew O'Brien oversaw hiring and matriculation, onboarding of new faculty members and making appeals to the Provost about needs for staffing either as faculty members or staff members. (O'Brien Dep. Ex. 6, pg. 6)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

75. O'Brien nominated Sinha to one of the chaired professorships. (O'Brien Dep. Ex. 6, pg. 10)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

76. O'Brien informally had a conversation with the Provost saying these underutilized resources should be dedicated to people in kind of the discipline, and here are the people in the discipline. Professor Sinha was one of them. (O'Brien Dep. Ex. 6, pg. 10-11)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. For clarification, this testimony relates to chaired professorships that were available, not the department chair position.**

77. O'Brien talked to the Provost about having Sinha fill the Stevenson professorship or the other one. (O'Brien Dep. Ex. 6, pg. 11)

18

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

78. O'Brien couldn't recall whether Provost supported Sinha being given the professorship. (O'Brien Dep. Ex. 6, pg. 11-12)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

79. O'Brien's interim dean tenure started February 1 of 2018 and finished in January 15<sup>th</sup>ish of 2022. (O'Brien Dep. Ex. 6, pg. 13-14)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

80. O'Brien had discussions with the Provost about the finance department chair on a number of occasions, three or four or five occasions, by offering options to get back to that model of faculty governance in the finance department. (O'Brien Dep. Ex. 6, pg. 14)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

81. O'Brien advised the Provost that Sinha was interested in becoming department chair. (O'Brien Dep. Ex. 6, pg. 18)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

82. Sinha was qualified to be a department chair. (O'Brien Dep. Ex. 6, pg. 18)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To clarify, the cited testimony was that O'Brien's opinion was**

19

**that Sinha was qualified to be a department chair, not that he should be. O'Brien's opinion is not relevant to Dean Gribb's decision not to ratify Sinha's election.**

83. During the four-year period as interim Dean, O'Brien did not recall any problems with in-fighting amongst the finance department members and that the faculty got along with one another adequately. (O'Brien Dep. Ex. 6, pg. 19)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

84. O'Brien discussed with the Provost Sinha's qualifications for Chair position. (O'Brien Dep. Ex. 6, pg. 19-20)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. In the cited testimony, O'Brien clarified that he merely told the Provost that Sinha had previously been Chair of the Department.**

85. O'Brien was aware that Sinha had sued Bradley. (O'Brien Dep. Ex. 6, pg. 20)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. O'Brien's knowledge that Sinha had sued Bradley is not relevant to Dean Gribb's decision not to ratify Sinha's election.**

86. O'Brien denied telling Sinha that as long as Zakahi was Provost Sinha was not going to be department chair. (O'Brien Dep. Ex. 6, pg. 20)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

87. O'Brien relayed to Sinha that he had offered and advocated for somebody in the department to be department chair and Sinha was certainly among that list of people O'Brien felt would have been appropriate but after O'Brien had laid out options for self-governance to the

20

Provost, at some point he, the Provost, came back and said let's look for another external department chair to appoint to that department. (O'Brien Dep. Ex. 6, pg. 20-21)

**Reply: This is material and undisputed.**

88.    O'Brien did not believe he told Sinha that if he had the ability, he would appoint Sinha as Chair. (O'Brien Dep. Ex. 6, pg. 21)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

89.    O'Brien said he never learned the reasons why the Provost was not going to allow an election. (O'Brien Dep. Ex. 6, pg. 21-22)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

90.    O'Brien did not believe he would have not ratified anybody who was elected. (O'Brien Dep. Ex. 6, pg. 22)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

91.    O'Brien had no reason to believe Sinha was not suitable to be department chair but did not recall the Provost using words about Sinha to the effect of no, no, not him. (O'Brien Dep. Ex. 6, pg. 23)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

92.    Sinha expressed an interest in becoming the associate dean and was qualified to be an associate dean. (O'Brien Dep. Ex. 6, pg. 26, 28)

21

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

93.   O'Brien hired Sinha to be a coordinator which did not require Provost or presidential approval. (O'Brien Dep. Ex. 6, pg. 29)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

### Testimony of Amit Sinha

94.   Because of the hostility that was coming from the Provost's office, Sinha was not confident that O'Brien's recommendations would go through. So Sinha thought he would document it so he would remember the conversation. (Sinha Dep. Ex. 7, pg. 10) (Sinha's contemporaneous notes of events and conversations, Ex. 11)

**Reply: This is immaterial but disputed. The recommendation referred to in the cited testimony is not a recommendation concerning Sinha serving as department chair. Instead, it is concerning Sinha's claim that O'Brien nominated Sinha for a chaired professorship. Further, Sinha explained that the hostility he referenced as coming from the Provost's office was his removal as chair in 2017 and also the events surrounding his promotion to full professor. (ECF #29-7, pp. 10(line 24)-11(lines 1-11));** *See,* **ECF #28-3, pp. 7-17 (being Sinha's 2018 federal court complaint). Thus, the hostility and recommendations referenced had nothing to do with Dean Gribb's not ratifying Sinha's department chair election on March 4, 2022.**

95.   On March 25, 2021, Professor Robin, who was serving as the associate dean, was hired to be the Dean at Southern Connecticut State University. That position had opened up, and Sinha was desirous of being considered for it. Sinha had asked O'Brien to consider him for that

position, and O'Brien said that he couldn't put Sinha in that position because it would not go well with the upper administration and Sinha asked him why. O'Brien didn't specifically respond to Sinha's question but he said if he could he would put Sinha in as the chair for the finance department. (Sinha Dep, Ex. 7, pg. 18-19)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To clarify, it is undisputed that this was Sinha's testimony.**

96.    Sinha documented O'Brien's statement that if he could have he would have appointed Sinha as department chair which is obviously different than associate dean. Appointment as associate dean was not acceptable but if O'Brien could he would appoint Sinha as the department chair. After meeting with Zakahi over succession planning, O'Brien concluded as long as Zakahi was Provost, Sinha would not be chair. (Sinha Dep, Ex. 7, pg. 17, 20, Ex. 11)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To be clear, there is no dispute that this was Sinha's testimony, but these events, as viewed by Sinha, that occurred in March and April of 2021 have nothing to do with the 2022 Chair election.**

97.    Sinha's chronology noted O'Brien would recommend the hiring of a new department chair on April 1, 2021. Sinha understood O'Brien would make the recommendation on April 1. Sinha then recorded under the March 31 entry that after the meeting, Sinha went and told O'Brien not to exclude him from consideration as department chair because Sinha wanted to be absolutely sure that O'Brien knew that Sinha was still interested in being department chair. (Sinha Dep, Ex. 7, pg. 20-21)

**Reply:   This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To be clear, there is no dispute that this what Sinha wrote in his**

23

**chronology, but these events, as viewed by Sinha, that occurred in March and April of 2021 have nothing to do with the 2022 Chair election.**

98. O'Brien told Sinha that Zakahi's response was that O'Brien's recommendation cannot happen at this point. (Sinha Dep, Ex. 7, pg. 21)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To clarify, however, the Provost's alleged response on April 2, 2021 had to do with the Finance Department having its own leadership, not whether Sinha would be appointed Department Chair.**

99. The steps that were taken regarding an external chair was O'Brien made a request to fill a position to the Provost's office which was approved sometime later on. Sinha did not remember exactly the chronology on when that official request was made, there was no placement for jobs made on any professional websites in April of 2021. (Sinha Dep, Ex. 7, pg. 22-23)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

100. Sinha said at that point he thought O'Brien was feeling a little frustrated continuing as the chair for the finance department and also as the dean where his position was also going to be ending. O'Brien mentioned he wanted to have that issue resolved before the new dean came in. (Sinha Dep, Ex. 7, pg. 23)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

101. O'Brien told Sinha that he would be his number one candidate to be the chair of the department but they won't allow O'Brien to do that. (Sinha Dep, Ex. 7, pg. 23)

24

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To clarify, this is what Sinha testified occurred in April of 2021.**

102. As for whether there was anything happening at that time that would lead to either a new internal or a new external chair for your department, Sinha must have asked him what's going on with the chair in the department --for the department. So when O'Brien said that, well, you would be the number one candidate but they won't allow me, that showed a pattern as to why Sinha was not going to be the chair. (Sinha Dep. Ex. 7, pg. 24)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. Sinha's testimony was: "So the pattern there is some reason for why I will not be the chair always another conversation that supports that. So I documented that." This, however, was in April of 2021, long before Dean Gribb was even employed at Bradley.**

103. Sinha stated to O'Brien on April 30, 2021, now that Bradley won, what is the plan for the department. Sinha told O'Brien that he lost his appeal and that – now that Bradley had won – and won here refers to losing the petition at the 7th Circuit Court of Appeals. So there has to be some plan of what has to be – what course of action Bradley was going to take, and O'Brien was serving as the dean. That's why Sinha had gone and asked him about it. (Sinha Dep. Ex. 7, pg. 25)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

104. On April 30, 2021, O'Brien said to Sinha that he was having conversations with the Provost. O'Brien said he had advocated for Sinha and conveyed that Sinha is ready (to be Finance Chair) and has the department behind him. (Sinha Dep. Ex. 7, pg. 28)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

105. In April 2021, O'Brien was going to leave that position and he was trying to get things cleaned up for his successor and for the chair successor, O'Brien was referring to looking at people within Foster College who could act as interim chair. (Sinha Dep. Ex. 7, pg. 30)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

106. On May 5th or shortly thereafter, Sinha recorded that O'Brien told him that Stephen Kerr would be the chairperson for the upcoming year. Sinha believed Kerr was an accounting professor and perhaps he was also finishing up his term as the chair for the accounting department. That part Sinha did not remember 100 percent for sure. (Sinha Dep. Ex. 7, pg. 31)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

107. On Sinha's May 5th entry in the chronology, he noted he asked O'Brien if the Provost ever gave an explanation in reference to Sinha becoming a chair and the Provost not being interested in that. O'Brien told Sinha the that the only thing he was told was no, no, not him. (Sinha Dep. Ex. 7, pg. 34)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To clarify, this was Sinha's testimony about what happened in May of 2021 and had nothing to do with the 2022 election.**

108. Sinha was never given any more details by O'Brien beyond what Sinha documented. (Sinha Dep. Ex. 7, pg. 34)

26

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

109. In a rather brief conversation, Sinha told O'Brien that the problem with the department lay with the Provost's office and not with him. O'Brien responded that Zakahi followed through with what Radson wanted and now he has placed himself in a corner. This has gone on for far too long, and it need not have. The department didn't get to have its say as to who would be the leader for the department. (Sinha Dep. Ex. 7, pg. 35)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. To clarify, it is undisputed that this was Sinha's testimony.**

110. During the week of May 10 to 14, it was finals week. Sinha had a conversation with Kerr about the problem with the finance department does not lie within the department. Sinha told Kerr they were professors, and opinionated professors can differ in their opinion but they were able work with each other in spite of their opinions, but they didn't get to have a say in who would be the leader of the department. (Sinha Dep. Ex. 7, pg. 36)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

111. During the May 10-14, 2021 conversation, when Sinha had said that the problem within – with the finance department does not lie with the department, Kerr indicated that the problem was with the Provost's office, not with the department. (Sinha Dep. Ex. 7, pg. 36)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. It is undisputed that this was Sinha's testimony.**

112. On June 10, 2021, Kerr told Sinha that a request to hire an external department chair was filed with the Provost at the end of May. Kerr would have filled out the forms and passed them

on to O'Brien, and O'Brien must have forwarded it to the Provost's office. (Sinha Dep. Ex. 7, pg. 37)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

113. In June 2021, it was obvious that the Provost wasn't going to let the finance department elect its own chair. (Sinha Dep. Ex. 7, pg. 37)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. It is undisputed that this was Sinha's testimony, but this case concerns an election that took place in 2022.**

114. There was no vote by the Finance Department faculty requesting the appointment of an outside chair. (Sinha Dep. Ex. 7, pg. 38)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

115. On June 10, 2021, when Sinha was told by Kerr that a request for an external department chair had been filed, Sinha did not indicate whether he was in favor or opposed to that. Sinha was reconciled that he wasn't going to be the chair even though he had wanted to be but it wasn't going to happen. If they wanted to do this, Sinha did not have to be in favor of it. They would have done it anyway. (Sinha Dep. Ex. 7, pg. 38)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

116. Sinha was not in favor of an external hire. (Sinha Dep. Ex. 7, pg. 38)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

28

117. In June 2021 to January 2022, Kerr would have come to Sinha and told him about it (external chair search) and may even asked Sinha if he wanted to be a member of the search committee. Sinha believes he told Kerr that he intended to apply for the Chair position so he couldn't be on the search committee. (Sinha Dep. Ex. 7, pg. 39)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

118. Before January of 2022, Gribb was not a Bradley employee. (Sinha Dep. Ex. 7, pg. 40-41)

**Reply: This is material and undisputed.**

119. Gribb told Sinha he was obstructing the process. He was obstructing the process for the external search when Sinha was insisting on following the handbook process which entailed the department voting in favor of an outside search. (Sinha Dep. Ex. 7, pg. 41)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. It is undisputed that this was Sinha's testimony. To clarify, the external search referenced here did not involve an election.**

120. On January 27, 2022 a meeting with Gribb took place in Sinha's office starting around 1:50 p.m. Sinha documented the meeting because much of the conversation bothered him tremendously. Sinha was shaken and tried to be as objective in his documentation as he could be. There were comments like when Gribb had come into Sinha's office and Sinha was having lunch and she said, oh, I'm sorry. I'm interrupting your lunch. Sinha said, don't bother. There were some plants in Sinha's office that had died, and she commented about those. Sinha didn't think those comments were relevant so he didn't document those. (Sinha Dep, Ex. 7, pg. 43, Ex. 11)

29

**Reply: This is material, and it is undisputed that Sinha so testified, which must be taken as true for purposes of Bradley's Motion.**

121. On January 28, 2022, Sinha briefed Kerr and Crystal Elliott about the January 27, 2022 conversation with Gribb. Elliott was the director for human resources or its equivalent. That is why Sinha thought Elliott should know that Gribb's conversation had bothered him quite a bit. Why would Gribb even come and tell Sinha he was obstructing the process where his e-mail was only asking her to follow the handbook procedure. Sinha felt that Gribb was kind of rude towards him, why would she keep interrupting him, why was she telling Sinha that he was being difficult. Those are not normal conversations to be had in an academic employment, especially hearing that from the boss. The other thing that bothered Sinha about the conversation was that it kind of established Gribb's predisposition towards him. Sinha felt that she was going to have a negative attitude towards him and that would not call for a good work environment. (Sinha Dep. Ex. 7, pg. 44-45)

**Reply: This is material, and it is undisputed that Sinha so testified, which must be taken as true for purposes of Bradley's Motion.**

122. In briefing Kerr, Sinha had tried to summarize that conversation and he believed Kerr said it is unfortunate that that conversation happened. (Sinha Dep. Ex. 7, pg. 45)

**Reply: This is material, and it is undisputed that Sinha so testified, which must be taken as true for purposes of Bradley's Motion.**

123. On February 1, 2022, Elliott mailed to Sinha that the handbook procedure would be followed in the chair election. (Sinha Dep. Ex. 7, pg. 46)

**Reply: This is material and undisputed.**

30

124. Sinha sent an e-mail to the president requesting a meeting. Stephens stopped by Dr. Phil Horvath's office to tell him they would follow the handbook procedure, which meant that the dean would call for an election, the recording secretary would be elected and call for nominations. The nominations would be finalized and the work for the chair election would happen. And once the election process comes, the recording secretary would inform the dean who the winner of the election was, and then the certification would come from the dean's office. (Sinha Dep. Ex. 7, pg. 46-47)

**Reply: This is material and undisputed.**

125. Sinha was recording pretty regularly events that were happening in connection with the department chair election in the finance department. (Sinha Dep. Ex. 7, pg. 47, Ex. 11)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

126. On Sinha's February 14, 2022 entry, Stephens said he did not know what everything Darrell Radson said to whom that led to the situation in the department. Sinha understood that to mean the department didn't have a chair, Sinha was removed as the department chair and the events leading to Sinha's removal. (Sinha Dep. Ex. 7, pg. 48)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

127. On February 25, 2022, after Sinha won the election, Sinha got an e-mail from Gribb requesting a meeting to discuss his election and to prepare a document listing personal and professional activities undertaken to address toxicity in the department. Sinha prepared a document and sent it to Gribb on February 28, 2022. (Sinha Dep, Ex. 7, pg. 48-49, Ex. 12)

**Reply: This is material and undisputed.**

31

128. Sinha's document stated that at that point in time, there was no toxicity. There were difference of opinions for sure and as faculty are opinionated and Sinha would not know if those should be construed as toxicity. (Sinha Dep. Ex. 7, pg. 50)

**Reply: This is material and undisputed.**

129. In Sinha's second bullet point to Gribb he was communicating that if the situation was as bad as people made it to be, Peplow (HR Director) would have recommended that Sinha be moved as department chair, but even after the investigation that she had carried out, she didn't make that recommendation. (Sinha Dep. Ex. 7, pg. 51, Ex. 12)

**Reply: This is material and undisputed that Sinha so testified, but the part of Sinha's statement cited says only that Peplow "…told me she had not asked for my removal as Department Chair." (ECF # 29-12, p. 1).**

130. Sinha listed statements from colleagues: Webster on August 29, 2018; Showers on August 2nd, 2016; Horvath on August 22nd, 2018; then going to the next page Amy Fairfield November 24, 2020. Sinha said people had nice things to say about him. (Sinha Dep. Ex. 7, pg. 51-52, Ex. 12)

**Reply: It is material and undisputed that this is part of Sinha's statement for Dean Gribb and that he so testified.**

131. When Sinha was the chair, Fairfield was serving as his department secretary. Sinha nominated her to be recognized for the Foster College staff appreciation award in December 2021. Sinha noted that his relationship was such that he was asked to be a pallbearer at her funeral. (Sinha Dep. Ex. 7, pg. 53)

**Reply: It is material and undisputed that this is part of Sinha's statement for Dean Gribb and that he so testified.**

32

132. Sinha's document noted the dean said he laughed too much and he was nominated for an award for professional excellence. (Sinha Dep. Ex. 7, pg. 54, Ex. 12)

**Reply: It is material and undisputed that this is part of Sinha's statement for Dean Gribb and that he so testified To clarify, the dean being referred to was Dean Radson, not Dean Gribb. (ECF #29-12, p. 2).**

133. In communicating to Gribb a listing of accomplishments and activities, Sinha wanted to show that he was a contributing member of the department and had the best interest of people in mind when he was doing stuff. So in terms of toxicity, people were being nice to Sinha and there are some examples where Sinha was nice to others. So this kind of continues with that perception that Sinha had that people are people and sometimes there could be a difference of opinion. That doesn't necessarily mean they are bad people. (Sinha Dep. Ex. 7, pg. 55, Ex. 12)

**Reply: It is material and undisputed that Sinha so testified.**

134. Sinha's list of accomplishments and activities listing was a rebuttal to the idea that there was a toxic environment or that he was contributing to a toxic environment. Sinha was just documenting things that he felt that were relevant. People, when those kinds of things (2017 removal as chair) happen, can end up being very, very bitter, but Sinha was surprised to find himself actually turning out to be more empathetic towards people. Sinha did not know what heading he would have put that in, and thought he had grown as a human being. So, he put it under personal development. (Sinha Dep. Ex. 7, pg. 55-56, Ex. 12)

**Reply: It is material and undisputed that Sinha so testified.**

135. In Sinha's toxicity statement, the first point he made was getting a better understanding of his emotions. He read many different books on past life regression hypnosis and

33

conducted a self-hypnosis -- and conducted self-hypnosis meditation sessions. (Sinha Dep. Ex. 7, pg. 56, Ex. 12)

**Reply: It is material and undisputed that Sinha so testified.**

136. Sinha said the literature shows that if you are aware of -- or if you become aware of near death experience, you tend to become more empathetic. And the signal that he was trying to give is that these experiences had made me -- not that I was a toxic individual before but reading through this literature has made me even more empathetic than I was before going through being fired as a department chair. (Sinha Dep. Ex. 7, pg. 58)

**Reply: It is material and undisputed that Sinha so testified.**

137. Sinha's toxicity statement listed the Ho'oponopono meditation which means make it right, and it has four sentences. So whoever makes you angry you can just imagine that individual and say I'm sorry. Please forgive me. I thank you, and I love you. And you can just keep saying that until the bitterness that you might have towards that individual just goes away. (Sinha Dep. Ex. 7, pg. 59, Ex. 12)

**Reply: It is material and undisputed that Sinha so testified.**

138. Sinha's point was that those things can make you even more an empathetic person. And because he had done those things, Sinha believed he was even more empathetic than he was before, and felt that given that this is a documentation for addressing toxicity, he felt it was important to mention those things. (Sinha Dep. Ex. 7, pg. 59)

**Reply: It is material and undisputed that Sinha so testified.**

139. Taking that course made Sinha a better human being and also made him a better professor. That is how he would explain that it has been part of his personal development. And that was how the training was set up, so how do you react. So if you react very negatively and lose

control of the situation, certainly then, you know, there's more for you to lose. So having gone through that seminar, Sinha believed that sometimes, dealing with opinionated professors can be stressful and that training would help him handle that situation a little better. (Sinha Dep. Ex. 7, pg. 61-62, Ex. 12)

**Reply: It is material and undisputed that Sinha so testified.**

140. Sinha's document to Gribb dealt with developing and improving professional skills such as planning and organization, leadership and management. Sinha's list, in part, included serving as the department liaison with Caterpillar. Sinha helped build a relationship with Morgan Stanley through Ms. Kay Berg that has resulted in people getting internships and subsequent to that jobs there. Sinha had also conducted a seminar at Bradley about AACSB accreditation. O'Brien and Jennifer Robin appointed me as the AACSB coordinator and Sinha had attended some seminars conducted through the AACSB. (Sinha Dep. Ex. 7, pg. 62, Ex. 12)

**Reply: This is material, but disputed to the extent that the facts as stated are not supported by the cited testimony. The question posed was whether there was anything in Sinha's statement (ECF #29-12) that he would consider to be professional development activity. Sinha's complete list of what he would consider professional development activity is included in this asserted undisputed fact.**

141. On March 4, 2022, in the presence of Interim Dean Paul Stephens, Gribb informed Sinha she would not ratify the election. The reason she provided was there was no professional development activities in the write-up that Sinha had provided. That was the only reason she had provided. (Sinha Dep. Ex. 7, pg. 63, Sinha's contemporaneous notes, Ex. 11)

**Reply: This is material and it is undisputed that Sinha so testified and documented which must be accepted as true for purposes of Bradley's Motion.**

142. In the lawsuit in 2017, it came out Zakahi was the one who had made the decision to remove Sinha as the chair. And through the conversations that Sinha had with Matt O'Brien, it didn't appear he would get a favorable hearing from Zakahi if Sinha brought this issue up with him. (Sinha Dep. Ex. 7, pg. 66-67)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

143. Sinha pointed out to Gribb, O'Brien was already well aware, that the department had to vote to hire an outside chair before a search was even undertaken. (Sinha Dep. Ex. 7, pg. 68, Ex. 10)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

144. Stephen Standifird, President did not respond to Sinha's emails so a meeting was not set up. (Sinha Dep. Ex. 7, pg. 69)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

145. If the dean does not approve the ratification of the election, the dean has to explain to the department why that ratification did not happen. Gribb did not do that. (Sinha Dep. Ex. 7, pg. 75)

**Reply: This is material and undisputed.**

146. Sinha was intending, if there was an outside search at Bradley for a department chair for Sinha's department, he would apply for the position. (Sinha Dep. Ex. 7, pg. 98)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

36

**Testimony of Erin Kastberg**

147. On February 4, 2022, Sinha emailed counsel for Bradley, Erin Kastberg. Sinha wanted clarification from her since she was involved in the legal issues arising out of Sinha's 2017 removal as chair. Sinha told her since he lost his appeal, he was hoping that he could get a fresh start, especially with getting a new dean. Sinha didn't think that would be the case because of his January 27, 2022 conversation with Gribb. Sinha told Kastberg that Gribb told him she had heard and read about why Sinha was removed as Department Chair. If somehow Sinha would be elected as chair, Gribb would not ratify his election. (Kastberg Dep. Ex. 8, Exhibit 14)

**Reply: This is material and undisputed. Exhibit 14 is included in the record at ECF #28-3, pp. 88-89.**

148. Sinha asked Kastberg if his removal as chair (subsequent lawsuits) was a permanent career path death sentence for him at Bradley. (Kastberg Dep. Ex. 8, Exhibit 14)

**Reply: This is material and undisputed. Exhibit 14 is included in the record at ECF #28-3, pp. 88-89.**

149. Kastberg responded to Sinha on February 7, 2022, telling Sinha that the past incidents did not mean he could never serve as chair but he needed to rebuild trust within the department and that the facts determined through the investigations five years prior and lawsuit were relevant and could be properly weighed by the dean. (Kastberg Dep. Ex. 8, Exhibit 14)

**Reply: This is material and undisputed. Exhibit 14 is included in the record at ECF #28-3, pp. 88-89.**

150. Kastberg told Sinha rebuilding trust takes time and suggested he undertake some personal and professional development opportunities. (Kastberg Dep. Ex. 8, Exhibit 14)

37

**Reply: This is material and undisputed. Exhibit 14 is included in the record at ECF #28-3, pp. 88-89.**

151. In reference to Kastberg's statement about "facts" were learned through the lawsuit, she was not aware of some kind of dirt that came out that would hamper Sinha's ability to be Chair. (Kastberg Dep. Ex. 8, pg. 7)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion.**

### November 5, 2019 Testimony of Walter Zakahi

152.    On November 5, 2019, Zakahi testified that it was his idea to remove Sinha as chair. (Zakahi November 5, 2019 Dep. Ex. 9, pg. 31)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. This was an issue in Sinha's 2018 lawsuit.**

153.    On November 5, 2019, Zakahi testified that it was his sole decision to remove Sinha as chair. (Zakahi November 5, 2019 Dep. Ex. 9, pg. 32)

**Reply: This is undisputed, but immaterial, as it has nothing to do with the issues raised by Bradley's Motion. This was an issue in Sinha's 2018 lawsuit.**

### Procedures

154.    Department Chair elections are governed by the Faculty Handbook. (Procedures, Ex. 10)

**Reply: This is material and undisputed.**

### Contemporaneous Notes

155. Sinha recorded statements made by his superiors about Zakahi and Gribb's animus against him and the faculty election. (Sinha's contemporaneous notes, Ex. 11)

38

**Reply: This is immaterial and disputed. Whether there was "animus" (i.e. ill will or animosity, Black's Law Dictionary p. 97 (8th Ed. 2004)), is not an issue in this case. The issue is whether there was any *retaliatory* animus. Further, this is disputed as unsupported by specific citations to the record to support the assertion that there was any animus, much less retaliatory animus.**

### (b) Argument

Sinha argues that Bradley's Motion should be denied because "[t]here is evidence of ambiguous statements of animus towards Sinha and pretext that create an issue of fact regarding the true cause of Bradley's failure to promote Sinha." (ECF #29, p. 39). Sinha's contentions are not supported by the record, including his 155 additional material facts. As the Seventh Circuit has observed, an overload of irrelevant or nonprobative facts do not add up to relevant evidence of discriminatory intent as zero plus zero is zero. *Gorence v. Eagle Food Centers, Inc.*, 242 F. 3d 759, 763 (7th Cir. 2001). Nor do Sinha's subjective beliefs as to the motives of others at Bradley raise an issue of material fact. *E,g.*, *Mills v. First Federal Savings & Loan Ass'n of Belvidere*, 83 F. 3d 833, 841-42 (7th Cir. 1996).

### No Ambiguous Statements Support an Inference of Retaliatory Animus

Sinha breaks his ambiguous statements argument down into five components: (1) "[c]onditions were ripe for discrimination;" (2) Provost Zakahi made ambiguous statements and retaliated against Sinha; (3) to retaliate against Sinha, Provost Zakahi told Dean Gribb not to ratify Sinha's election as chair of the Finance Department; (4) a reasonable jury could find that Dean Gribb adopted Provost Zakahi's discriminatory animus; and (5) a reasonable jury could "interpret" other ambiguous statements as "pointing toward knowledge of retaliatory animus."

39

While Sinha may rely on circumstantial evidence to oppose Bradley's Motion, the "...circumstantial evidence must point 'directly to the conclusion that an employer was illegally motivated, without reliance on speculation.'" *Langenbach v. Wal-Mart Stores, Inc.,* 761 F.3d 792, 800 (7th Cir. 2014). Such evidence is to be viewed in a light most favorable to Sinha, but he has the obligation to come forward with specific facts showing an issue for trial and cannot rely on inferences that are based on speculation or conjecture. *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). Thus, negative comments about an employee that do not hint at discriminatory animus are insufficient to raise an issue of fact for trial. "In order to suffice as direct evidence of discrimination, the comments must suggest that the decision maker 'was animated by an illegal employment criterion' or had 'a propensity...to evaluate employees based on illegal criteria.'" *Simpson v. Beaver Dam Community Hospitals, Inc.,* 780 F.3d 784, 791 (7th Cir. 2015). Sinha's ambiguous statements argument falls short of these standards.

The component of Sinha's argument based on conditions being ripe for discrimination simply has nothing to do with circumstantial evidence of a retaliatory animus on the part of Dean Gribb. Sinha relies on three cases for support. The first two, *Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir. 1976) and *E.E.O.C. v. Sears, Roebuck & Co.*, 839 F.2d 302 (7th Cir. 1988) were race and sex discrimination cases where statistical evidence showed the exclusion of protected groups. The issue in those cases was whether the employers' subjective hiring or promotion practices could constitute neutral procedures that would overcome the plaintiffs' statistical case. In *Hernandez v. City Wide Insulation of Madison, Inc.*, 508 F.Supp.2d 682 (E.D. Wis 2007), the court rejected an employer's argument concerning whether one employee was similarly situated to another because of the subjective nature of the employer's disciplinary standards. None of those

40

cases support the proposition that the existence of discretion in decision making is sufficient to support an inference of discriminatory intent.

The next component of Sinha's argument is that Provost Zakahi made ambiguous statements showing retaliatory animus is both unsupported by facts and misleading. Sinha argues that "...Zakahi told O'Brien, who told Sinha, '*no, no, not [Sinha]*', which '*cannot happen at this point*.'" (ECF #29, p. 41). Here, Sinha combines two different quotes from his chronology, neither of which has anything to do with the 2022 election. The first is from the May 5, 2021 entry in Sinha's chronology, in which he wrote that O'Brien had told him that Provost Zakahi had said when selecting Kerr for appointment as chairperson of the Finance Department for the upcoming academic year, that he would not appoint Sinha ("no...no, not him"). (ECF #29-11, p. 2) The other part of Sinha's composed statement is from the April 2, 2021 entry in his chronology where he says O'Brien told him that the Finance Department was ready to have their own leadership and Provost Zakahi responded, "that cannot happen at this point." (ECF #29-11, p. 1). Whether taken separately or together, Sinha's quotes from his chronology do not support an inference that Provost Zakahi had a retaliatory motive. If Provost Zakahi disapproved of Sinha due to the matters leading to his removal of Sinha as department chair in 2017, that would not constitute a retaliatory motive. *Widmar v. Sun Chemical Corp.,* 772 F.3d 457, 462 (7th Cir. 2014) (dislike based on personality or style does not demonstrate discriminatory motive).

Sinha then shifts to something of a timing argument, contending that in making those statements, Zakahi was taking his first opportunity to retaliate against Sinha. (ECF #29, pp. 41-42). The theory of Sinha's case, however, is that he was a victim of retaliation when Dean Gribb did not ratify his 2022 election. Zakahi's alleged statements have nothing to do with that.

41

The third component of Sinha's ambiguous statements argument is that based on Zakahi's purported retaliatory animus, of which there is no evidence, a jury could find that Zakahi told Gribb not to approve Sinha's election. This is the type of unbridled speculation that the Seventh Circuit has made clear does not qualify as circumstantial evidence of retaliation. *Langenbach v. Wal-Mart Stores, Inc., supra*, 761 F.3d at 800. The same is true of Sinha's fourth argument component, where he asserts that Dean Gribb could be found by a reasonable jury to have adopted Provost Zakahi's supposed retaliatory animus. Sinha also contends that Dean Gribb called him "difficult", which he says was an ambiguous statement of retaliatory animus referencing his 2018 lawsuit. (ECF #29, p. 43). That the Dean supposedly said Sinha was difficult does not support a reasonable inference that she was referencing Sinha's 2018 lawsuit.

The final component of Sinha's ambiguous statement argument is that there were other ambiguous statements by O'Brien and Kerr that a jury could consider. (ECF #29, p. 43-44). Neither O'Brien nor Kerr was decision maker here and the reference statements have nothing to do with the ratification of the election at issue.

### There Is No Evidence of Pretext

Sinha argues that his chronology shows that Dean Gribb gave inconsistent explanations for not ratifying the Finance Department chair election. He claims the first was on January 27, 2022, prior to the decision to even hold a department chair election. Sinha says that the Dean told him that if there were an election, she would not ratify it because "she mentioned she has heard about the reputation of the department, and read about my removal as chair without completion of the term." (ECF #29-11, pp. 2-3). The second explanation he identifies came after the election on March 4, 2022, when Sinha says the dean's reason for not ratifying the election was "...there was no professional development activities in the write-up that I had provided." (ECF #29-11, p. 4).

Even assuming the truth of Sinha's account, the explanations are not inconsistent. The first is that the Dean would never ratify an election because of the previous removal of Sinha as department chair. The second explanation shows that the Dean would have considered ratifying Sinha's election if he had addressed the leadership problems that resulted in his previous removal which was consistent with her testimony. (ECF # 29-3, p. 19). More fundamentally, however, nothing that Sinha relies on shows pretext. For pretext to be a potential basis for the finding of liability, it must be shown that the challenged explanations are an effort to conceal prohibited animus. *Napier v. Orchard School Foundation*, 137 F.4th 884, 893 (7th Cir. 2025). To show the Dean acted with prohibited animus, Sinha offers only speculation that the Dean could not have believed that Sinha's conduct "at the time of the election" was problematic or that the Dean could not have actually considered or been offended by the documentation associated with Sinha's prior removal as department chair. (ECF #29, p. 45). Nothing in the election procedures, however, restricts the factors that a dean may evaluate in deciding whether to ratify the election.

Finally, Sinha claims that he demonstrated professional development activities by listing meditation courses, and that, in any event, listing professional development activities was an unattainable goal made up after the fact. (ECF #29, p. 46). None of that supports an inference that Dean Gribb was engaged in deceit to cover her tracks, as required to establish pretext. *Kulumani v. Blue Cross Blue Shield Association,* 224 F.3d 681, 684 (7th Cir. 2000). Further, no performance goal was involved. The Dean simply wanted to know if there were professional development activities that she should consider in determining whether to ratify the election results.

## Conclusion

There is no dispute as to any genuine issue of material fact that Sinha was not the victim of illegal retaliation. Bradley's Motion should be granted.

Respectfully submitted,

Bradley University, Defendant


By: ___/s/ William R. Kohlhase_____
      William R. Kohlhase – IL Bar No. 1500589
      Miller, Hall & Triggs, LLC
      416 Main Street, Suite 1125
      Peoria, Illinois 61602
      Telephone:  (309) 671-9600
      Facsimile:  (309) 671-9616
      Email:  william.kohlhase@mhtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Julie L. Galassi and Bryant S. Lowe.

/s/  William R. Kohlhase
William R. Kohlhase – IL Bar No. 1500589
Miller, Hall & Triggs, LLC
416 Main Street, Suite 1125
Peoria, Illinois 61602
Telephone:  (309) 671-9600
Facsimile:  (309) 671-9616
Email:  william.kohlhase@mhtlaw.com
